289 N.J. Super. 55 (1996)
672 A.2d 1261
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ELDEGARD KELM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1996.
Decided March 21, 1996.
*56 Before Judges LONG, MUIR, Jr. and BILDER.
Matthew C. Hurley argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Mr. Hurley, of counsel and on the brief).
Nancy Peremes Barton, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Ms. Barton, of counsel and on the brief).
The opinion of this court was delivered by BILDER, J.A.D. (temporarily assigned on recall).
*57 Following a jury trial defendant was found guilty of issuing a bad check, N.J.S.A. 2C:21-5, and theft by deception, N.J.S.A. 2C:20-4. She was sentenced to concurrent custodial terms of four years consecutive to any sentence imposed by the State of Delaware for violation of probation. A VCCB penalty of $100 was imposed; the State concedes that this penalty should only have been $60.
The State's evidence depicted the following account. In early February 1991, through a local attorney, defendant sought a short term loan of a few thousand dollars which she said she needed to complete an escrow for an absent buyer in a real estate transaction in which defendant was the broker. Based on information obtained from the attorney, Ms. Joan Williams, believing the amount to be $2500, agreed to meet with defendant to make such a loan. When the parties met on February 10, 1991, Ms. Williams was told by defendant that she was involved in a real estate deal for a manufacturing plant and that she would lose a real estate commission if she did not obtain sufficient money to complete an escrow, the buyer she represented being out of town and unavailable. She said she needed $6000 and would repay the loan either from a reimbursement from the buyer or from commissions from a Florida sale. On that day Ms. Williams loaned defendant $6000, in the form of a check for $3500 and $2500 in cash. Five days later, on February 15, 1991, she went to the attorney's office and found an envelope addressed to her which contained a check from the defendant for $6000. Later that day in a phone conversation, defendant requested Ms. Williams to delay depositing the check to permit uncollected funds to clear. The following week Ms. Williams learned the check was uncollectible. There followed assurances from defendant and unsuccessful efforts to obtain money from the drawee bank. Finally Ms. Williams went to the police and was advised to deposit the check and let it be dishonored. When it was returned with a notation that it should not be presented again, that no account was on file, Ms. Williams filed a *58 criminal complaint against defendant. Records of the bank, testified to at trial, showed that defendant's account had negative balances from February 10, 1991 until is was closed on March 8, 1991.
For her part defendant admitted the making and delivery of the check for $6000 but claimed it was delivered on February 10, 1991 and had been post-dated. She denied any intention to defraud Ms. Williams. In her brief on appeal defendant contends:
POINT I.
THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT THE STATE IS NOT REQUIRED TO PROVE INTENT TO DEFRAUD AS AN ELEMENT OF ITS CASE UNDER N.J.S.A. 2C:21-5. (partially raised below)
1. The statute includes intent to defraud as an element of the State's case.
2. Case law includes intent to defraud as an element of the State's case.
3. The trial court's instructions were erroneous.
4. Public policy considerations require that intent to defraud be a required element of the State's case.
5. Conclusion: the trial court's erroneous charge to the jury resulted in a mistaken application of the law.
POINT II.
THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION FOR COUNT TWO, THEFT BY DECEPTION, AND THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT TWO.
1. N.J.S.A. 2C:20-4 contains the same elements as the earlier N.J.S.A. 2A:111-1.
2. The law requires the state to prove that the defendant knowingly perpetrated fraud.
3. No evidence exists to prove that Mrs. Kelm obtained money from Ms. Williams by any deliberate fraud, false pretenses or deception.
POINT III.
THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION ON EITHER COUNT. (partially raised below)
POINT IV.
THE TRIAL COURT ERRED BOTH IN NOT ALLOWING THE DEFENSE TO USE THE WORD "USURY" AND IN NOT INSTRUCTING THE JURY AS TO A DEFENSE OF USURY. (partially raised below)
POINT V.
THE SENTENCE IMPOSED ON DEFENDANT IS EXCESSIVE.

*59 I.
The principal issue on appeal is whether an intent to defraud the victim is an element of N.J.S.A. 2C:21-5. Defendant contends that the issuance of a post-dated check cannot be found to be a violation of the criminal statute and that proof of an intent to defraud is required for a conviction. In support of that defendant relies heavily on a predecessor bad check statute, N.J.S.A. 2A:111-15, and case law interpreting that former law.
N.J.S.A. 2C:21-5, in pertinent part, reads as follows:
A person who issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee, commits an offense * * * * *. For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, an issuer is presumed to know that the check or money order (other than a post-dated check or order) would not be paid, if:
....
(b) Payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within 10 days after receiving notice of that refusal or after notice has been sent to the issuer's last known address. Notice of refusal may be given to the issuer orally or in writing in any reasonable manner by any person.
Defendant's reliance on N.J.S.A. 2A:111-15 is misplaced[1]. The need to show that the check was drawn "with intent to defraud" was specifically set forth in the statute. N.J.S.A. 2C:21-5 does not contain any such requirement, merely knowledge at the time the check is issued or passed that it will not be honored by the drawee. Cases involving the requirement of an intent to defraud under the old statute are irrelevant.
Defendant's contention that the statute's reference to a post-dated check exempts such checks from its operation is similarly without merit. This provision merely excludes post-dated *60 checks from the statutory presumption of knowledge that the check will not be paid. When the instrument is post-dated the presumption is inapplicable; the State must show that the drawer knew at the time the post-dated check was drawn that it would not be honored on the later date when presented.
In his charge the trial judge instructed the jury:
The State must prove the following elements beyond a reasonable doubt in order to convict the defendant under this [bad check] count. The State must prove that the defendant knowingly issued or passed the check for the payment of money and, two, that the defendant knew at the time that she issued or passed the check that it would not be honored by the drawee. Two things must occur at the same time: the defendant knowingly passed the check for the payment of the money and knew at the time she gave the check over to Mrs. Williams that it would not be honored by the bank.
* * * * * * * *
There is some argument that has been made that the testimony allows you and compels you to infer that there was a post-dated check situation. It is for you to determine when this particular check was issued; was it issued on the 15th, the date it was dated, or was it issued on the 10th? You should examine the evidence carefully to determine whether or not you can make such an inference. If you do come to the conclusion that the check was issued on the 10th, that is that it is a post-dated check, then the element that the defendant knew that it would not be honored by the bank requires proof, again beyond a reasonable doubt, that the defendant knew at the time the check was issued that it would not be honored in the future on the 15th. So if you come to that determination, that check was issued on the 10th, the State must prove that the defendant knew on the 10th that the check would not be honored on the 15th. Now, the State is not required to prove under the statute that there was any intent to defraud; the State need only prove that the defendant knew that the check would not be honored in the future.
We are satisfied the jury was correctly instructed by this charge.

II.
Defendant's remaining contentions are clearly without merit. R. 2:11-3(e)(2). As the trial judge noted in denying defendant's motion for a judgment of acquittal as to the theft count, her conduct after the delivery of the check permitted the inference that she created a false impression as to her anticipation of funds which would enable her to repay the $6000 and that she never *61 intended to repay Ms. Williams. Defendant did not seek to employ usury as a defense, nor did she seek a jury instruction as to usury. Moreover the subject was irrelevant. The sentence is unexceptionable. See State v. O'Donnell, 117 N.J. 210, 216, 564 A.2d 1202 (1989); State v. Roth, 95 N.J. 334, 365-366, 471 A.2d 370 (1984).
Affirmed and remanded for imposition of a proper VCCB penalty.
NOTES
[1] N.J.S.A. 2A:111-15, in pertinent part, read: Any person who * * * with intent to defraud, makes, draws, utters or delivers a check * * * knowing at the time of so doing that the maker or drawer, has no funds or insufficient funds in, or credit with, such bank * * * for the payment of such instrument, in full, upon its presentation, although no express representation is made in reference thereto, is guilty of a misdemeanor * * *.